IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THOMAS R. COX, | ) | CIVIL NO. 05-00765 JMS/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION TO COMPEL |
| OCEAN VIEW HOTEL | ) | ARBITRATION AND TO STAY |
| CORPORATION doing business as | ) | JUDICIAL PROCEEDINGS |
| Radisson, JOHN DOES 1-50; JANE | ) | PENDING ARBITRATION AND |
| DOES 1-50; DOE PARTNERSHIPS | ) | GRANTING PLAINTIFF'S MOTION |
| 1-50; DOE CORPORATIONS 1-50; | ) | FOR PARTIAL SUMMARY |
| and DOE ENTITIES 1-50, | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO STAY JUDICIAL PROCEEDINGS PENDING ARBITRATION AND
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I. INTRODUCTION

Defendant Ocean View Hotel Corporation ("Defendant") has moved

the court for an order compelling Plaintiff Thomas R. Cox ("Plaintiff") to arbitrate

his claims against the Defendant; Defendant also asks the court to stay judicial

proceedings pending arbitration. The Plaintiff, meanwhile, has moved the court

for partial summary judgment as to his claim that the Defendant breached its

agreement to arbitrate disputes with the Plaintiff.  Based on the following, the

court DENIES the Defendant's motion and GRANTS the Plaintiff's motion.

## II.  <u>BACKGROUND</u>

The Plaintiff worked for the Defendant from 2001 to 2004 as the

Director of Finance for the Radisson Waikiki Prince Kuhio Hotel.  On July 17,

2001, the Plaintiff and Defendant entered into a "Letter of Agreement," which set

forth the terms of the Plaintiff's employment with the Defendant.  The Letter of

Agreement, in addition to setting forth the Plaintiff's job description and

compensation, contained the following arbitration clause:

ARBITRATION

Any disputes between Employer [the Defendant] and Employee
[the Plaintiff] arising out of the employment relationship shall be
settled by arbitration in accordance with the then current Model
Employment Arbitration Procedures of the American Arbitration
Association (AAA) in lieu of jury trial and all other judicial
dispute resolution methods.  Employee fully understands and
accepts this.  A judgment on the award rendered by the
arbitrator(s) may be entered by any court having jurisdiction
thereof.  Any controversy except for Workmen's Compensation,
involving the construction or application of the terms, provisions,
or conditions of this Agreement or otherwise arising out of or
related to this Agreement shall likewise be settled by arbitration.
This agreement to arbitrate covers all employment disputes
including but not limited to those involving tort, wrongful
discharge, and discrimination claims.  The cost of the arbitration
shall be paid by the Company [the Defendant].  The location of

> the arbitration shall be paid by the Company.  The location of the
> arbitration shall be in the County in which the Company is
> located.  This Clause cannot be amended without written consent
> of both parties.

Defendant's Ex. A at 3.[1]  The Letter of Agreement also provided that "[t]he

validity, interpretation, enforceability, and the performance of this Agreement shall

be governed by and construed in accordance with the law of the State of

California."  Defendant's Ex. A at 4.

The present dispute centers on whether, in 2004, the Plaintiff

requested arbitration and whether the Defendant refused that request to arbitrate.

On October 9, 2003, the Plaintiff attended a meeting with Gary Jutz

(the Plaintiff's supervisor, General Manager of the Radisson Waikiki Prince Kuhio

Hotel), Rae Takahashi (the Plaintiff's subordinate, an Accounting Manager), and

another employee.  The Plaintiff claims that, at that meeting, he became aware of

an unsigned, undated letter addressed to Jutz.  That letter accused the Plaintiff of

violating company policy by having a "'secret' relationship" with Takahashi.

Plaintiff's Ex. 2.  The Plaintiff alleges that he and Ms. Takahashi did not have any

kind of romantic or sexual relationship, but Jutz nevertheless instructed the

---

[1]  As discussed more fully *infra*, both the Plaintiff and the Defendant have filed motions
with exhibits.  For ease of reference, "Defendant's Ex. __" will refer to those exhibits attached to
the Defendant's Motion to Compel Arbitration and "Plaintiff's Ex. __" will refer to those
exhibits attached to the Plaintiff's Opposition to the Defendant's Motion to Compel Arbitration.

Plaintiff and Ms. Takahashi to stop whatever they were doing.  Later that day, the

Plaintiff sent a letter to the Director of Human Resources in which he stated "I wish

to file a formal complaint of harassment."  Plaintiff's Ex. 3.  The Plaintiff appears

to have withdrawn this complaint shortly after filing it, although this is unclear.

*See* Plaintiff's Ex. 6 at 2.

The perception that the Plaintiff had an inappropriate personal

relationship with Ms. Takahashi apparently persisted for the next year, though the

Plaintiff maintains he did nothing wrong.  On October 5, 2004, Jutz sent the

Plaintiff a letter stating that the Plaintiff's personal relationship with Ms. Takahashi

had led to a "perception of favoritism."  As a result, Jutz instructed the Plaintiff as

follows:

> I have advised you over the past few months that your personal
> relationship with a subordinate is affecting the organization and
> I have asked you to correct this situation. . . .  You have chosen
> to deliberately ignore my advice, and your relationship with a
> subordinate continues to be a disruptive force in your
> department and the hotel in general.  It is affecting your job
> performance and the performance of the Accounting
> Department.  We are beyond the days of counsel.  I am
> directing you to stop.  Starting immediately, either you or the
> Accounting Manager will be on property at all times during the
> normal business day.  That is to say, lunch off-property on a
> daily basis with your subordinate will cease.

> Failure to change your behavior and maintain expected work
> responsibilities is a serious disciplinary matter.  A continued
> failure to work within the organization to resolve this
> situation in a manner beneficial to all may ultimately be
> deemed an act of insubordination and grounds for immediate
> termination of employment.

Plaintiff's Ex. 4 at 1-2.

On October 11, 2004, the Plaintiff sent a letter to Clyde Guinn, Senior

Vice President of Operations for the hotel.  The letter began by stating, "It is with

much regret that I must file this request to enter into arbitration."  The letter

accused the hotel of sex discrimination, harassment, and retaliation, among other

things.  The letter ended by asking Guinn to contact the Plaintiff's attorney with the

date, time, and location of the arbitration hearing.  Plaintiff's Ex. 5 at 1-2.

On October 27, 2004, Guinn responded to the Plaintiff's letter.

Guinn's letter began by stating, "I refer to your letter of October 15th 2004 in which

you demand arbitration . . . ."  Plaintiff's Ex. 6 at 1.  Guinn proceeded to disagree

with the substance of the Plaintiff's complaints, after which he stated the

following:

> In summary, therefore, I do not consider this is [sic] a
> case for arbitration.  Gary Jutz believes that your behavior, as a
> senior member of the hotel management team, is cause for
> censure.  You do not accept this is the case.  Clearly, if you
> continue to pursue the activities which Gary Jutz has
> complained of, you run the risk of being terminated.  At that

5

> point, assuming you then consider it a wrongful termination,
> arbitration may be in order.

Plaintiff's Ex. 6 at 2.

On November 16, 2005, the Plaintiff filed a Complaint in the Circuit

Court of the First Circuit of the State of Hawaii.  On December 9, 2005, the

Defendant removed this action to federal court pursuant to 28 U.S.C. § 1441.  On

December 16, 2005, the Defendant filed a Motion to Compel Arbitration and to

Stay Proceedings Pending Arbitration.  On February 2, 2006, the Plaintiff filed a

Motion for Partial Summary Judgment; the motion asks the court for summary

judgment as to the Defendant's refusal to arbitrate.  The court heard arguments on

the motions on March 13, 2006.

## III.  STANDARD OF REVIEW

A.    Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to

isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

B.      Motion to Compel Arbitration

        The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "The standard for demonstrating arbitrability is not high.  The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead

7

mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)).

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute.  Instead, the court must examine whether there exists a valid agreement to arbitrate, whether the parties' dispute falls within their arbitration agreement, and whether there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991).  If the court concludes that the lawsuit at issue is covered by an enforceable arbitration agreement, and one party to the agreement seeks to enforce the arbitration provision, the court must stay the lawsuit until the arbitration has been completed.  9 U.S.C. § 3.

## IV.  ANALYSIS

The parties agree that the claims raised in the Plaintiff's Complaint fall within the scope of the arbitration agreement.  The parties also agree that California law applies to the instant dispute, as provided in the Letter of Agreement, and the court sees no reason why another state's law should apply.  The parties disagree,

however, as to whether they must arbitrate at the present time.  The Plaintiff

contends that the Defendant, having refused to arbitrate in October 2004, cannot

now seek to enforce the arbitration agreement.  The Defendant, on the other hand,

argues that:  (1) the Plaintiff did not properly initiate arbitration (such that the

Defendant could not have refused to arbitrate); (2) the Plaintiff's request for

arbitration was premature; (3) the Defendant did not refuse to arbitrate; and (4) the

Defendant did not waive its right to enforce the arbitration provision.

 The court agrees with the Plaintiff.  The Plaintiff contends that *Brown*

*v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), controls in this case.  In *Brown*,

the plaintiff, an employee of Dillard's Department Store, had signed an arbitration

agreement with Dillard's; when the plaintiff's employment was terminated, the

plaintiff filed a notice of intent to arbitrate her wrongful termination claim.

Dillard's ignored her request.  The plaintiff ultimately filed suit, at which point

Dillard's sought to compel arbitration.  The Ninth Circuit refused to enforce the

agreement, concluding that Dillard's had breached its contract with the plaintiff

and that Dillard's had waived its right to enforce the arbitration agreement.

 Defendant seeks to distinguish the instant case from *Brown* on two

grounds.  First, the Defendant argues that, unlike the plaintiff in *Brown*, Cox did

not properly initiate arbitration, such that there was no refusal to arbitrate by the

Defendant.  Second, the Defendant argues that even if the Plaintiff did properly

request arbitration, the Defendant did not refuse to arbitrate -- it merely stated that

the Plaintiff's claims were not ripe for arbitration, but that it would be willing to

arbitrate if and when the time was right.

The Defendant's arguments are without merit.

**1.      Initiation of arbitration**

The Letter of Agreement itself does not specify the manner in which

an employee should initiate arbitration.  The Letter of Agreement states as follows:

> Any disputes between Employer and Employee arising out of
> the employment relationship shall be settled by arbitration in
> accordance with the then current Model Employment
> Arbitration Procedures of the American Arbitration Association
> (AAA) in lieu of jury trial and all other judicial dispute
> resolution methods.

The AAA website, www.adr.org, provides that an individual may commence

arbitration by completing the "Demand for Arbitration" forms in triplicate, sending

one copy to the adverse party, and sending the remaining two copies (along with

payment) to a local AAA Case Management Center.

The Defendant contends that the Plaintiff did not properly initiate

arbitration because the Plaintiff did not follow the AAA instructions.  The court

disagrees for two reasons:  first, the arbitration clause should be interpreted in

favor of arbitration; second, the Defendant is estopped from arguing that the

Plaintiff failed to properly initiate arbitration proceedings.

a.    The Plaintiff Properly Requested Arbitration

The FAA provides that "any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a

like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24-25 (1983); *see also Chan v. Drexel Burnham Lambert, Inc.*,

178 Cal.App.3d 632, 639, 223 Cal.Rptr. 838, 842 (Cal. App. 2 Dist. 1986)

("[A]mbiguities in an arbitration clause are to be resolved in favor of arbitration,

notwithstanding the California rule that a contract is construed most strongly

against the drafter[.]").  The Letter of Agreement does not give the Plaintiff

specific information on how to file a request for arbitration.  Although it references

the AAA, the Letter of Agreement does not give an aggrieved employee any

guidance on where to look for the rules or how to vindicate his or her rights.  The

Letter of Agreement is therefore vague as to initiation of arbitration proceedings.

The Defendant is essentially arguing that it was not required to

arbitrate in October 2004 because the Plaintiff's letter was insufficient to institute

arbitration proceedings.  Nevertheless, because the Letter of Agreement was vague,

and because ambiguities in arbitration clauses shall be resolved in favor of arbitration, the court concludes that the Plaintiff's letter demanding arbitration *was* sufficient to initiate arbitration.  Consequently, the Defendant's argument is without merit.

> b. <u>Even if the Plaintiff's request for arbitration was insufficient, the Defendant is estopped from arguing that the request was insufficient</u>

On October 27, 2004, Guinn (Senior Vice President of Operations) responded to the Plaintiff's arbitration request by stating, "I refer to your letter of October 15th 2004 *in which you demand arbitration . . . .*"  Plaintiff's Ex. 6 at 1 (emphasis added).  Guinn further stated that "I do not consider this is [sic] a case for arbitration."  Plaintiff's Ex. 6 at 2.  Nowhere in the letter does Guinn state that the reason for the refusal to arbitrate is failure to comply with the AAA requirements.  Instead, Guinn informs the Plaintiff that the Defendant *will not arbitrate* the Plaintiff's claims for harassment and discrimination.  In fact, the refusal to arbitrate appears to be based on Guinn's disagreement with the Plaintiff's claims as set forth in his October 15, 2004 letter demanding arbitration.  As such, the Defendant is estopped from arguing that it would have arbitrated had the Plaintiff properly requested arbitration.

12

"Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party[.]"  *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970).  The Ninth Circuit has set forth the following test to determine whether to apply equitable estoppel:

> "Four elements must be present to establish the defense of estoppel:  (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Id.* (quoting *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)).

The Defendant's argument, in essence, is that it would have arbitrated had the Plaintiff properly requested arbitration.  Nevertheless, the Defendant told the Plaintiff that it (the Defendant) simply would not arbitrate the Plaintiff's claims of discrimination, harassment, and so on.  All four factors of the equitable estoppel test have been met here:  (1) if the Defendant's true reason for refusing arbitration was the Plaintiff's failure to comply with AAA rules, then the Defendant necessarily knew of the relevant AAA rules and knew that its true reason for refusing arbitration was a violation of those rules; (2) the Defendant's letter came from the Senior Vice President of Operations, and the Plaintiff is certainly entitled

to believe the Defendant's statement that the Defendant did not consider this a case for arbitration; (3) the Plaintiff was never informed that there was any technical deficiency with his arbitration request; and (4) the Plaintiff relied on the Defendant's refusal to arbitrate by proceeding with litigation.  As such, the Defendant will be equitably estopped from arguing that the Plaintiff failed to properly initiate arbitration.

### 2.    Refusal to arbitrate

In *Brown*, the Ninth Circuit held that "Dillard's breached its agreement with Brown by refusing to participate in the arbitration proceedings Brown initiated.  Having breached the agreement, Dillard's cannot now enforce it." *Brown*, 430 F.3d at 1010.  In the instant case, the Plaintiff contends that the Defendant's motion should be denied because the Defendant breached the arbitration agreement and, consequently, can no longer enforce it.  In the alternative, the Plaintiff contends that the Defendant waived its right to enforce the arbitration provision of the employment contract; the Plaintiff again rests his argument on *Brown*, in which the court concluded that Dillard's had waived its

right to arbitrate. *Id.* at 1012. The court agrees with both of the Plaintiff's arguments.[2]

      a.    <u>Breach of contract</u>

The Plaintiff argues that the Defendant may not seek to enforce the arbitration agreement because, by refusing to arbitrate, the Defendant breached the agreement. The Plaintiff points to *Brown*, which held that, "[u]nder general principles of California contract law, [the employer's] breach of its obligations under the arbitration agreement deprives it of the right to enforce that agreement." 430 F.3d at 1010.

The Defendant argues that it never refused to arbitrate. Instead, the Defendant states that it declined to arbitrate because "at the time Cox requested arbitration, none of his claims had matured." Defendant's Reply Memorandum in Support of Motion to Compel Arbitration at 3. The Defendant contends that all the claims set forth in the Plaintiff's Complaint are based on wrongful termination, such that the Defendant could not have arbitrated these claims in October 2004 (while Cox was still an employee). Defendant's Memorandum in Opposition to

---

[2] The Plaintiff also argues that the arbitration agreement is unconscionable and that the court should therefore refuse to enforce the agreement. The court need not reach this argument, however, inasmuch as the court concludes that the Defendant is not entitled to enforce the agreement based on breach of contract and waiver principles.

Plaintiff's Motion for Summary Judgment at 3-4.  The Defendant maintains that it would have arbitrated the Plaintiff's wrongful termination claim had the Plaintiff requested arbitration after his employment was terminated, but that, at the time the Plaintiff requested arbitration, there was simply nothing to arbitrate.

This argument is specious.  The issue is *not* whether the Plaintiff, at the time he requested arbitration, could have arbitrated the claims now set forth in the Complaint; obviously, the Plaintiff could not have arbitrated a wrongful termination claim while still employed by the Defendant.  Instead, the issue is whether the Plaintiff had a ripe claim for arbitration at the time he demanded arbitration.

The Plaintiff clearly had a ripe claim for arbitration when he submitted his October 11, 2004 letter.  Jutz's October 5, 2004 letter indicated that Plaintiff's employment was in jeopardy:

> Failure to change your behavior and maintain expected work responsibilities is a serious disciplinary matter.  A continued failure to work within the organization to resolve this situation in a manner beneficial to all may ultimately be deemed an act of insubordination and grounds for immediate termination of employment.

Plaintiff's Ex. 4 at 2.  Indeed, Guinn's October 27, 2004 response to the Plaintiff indicates the seriousness of the dispute between the Plaintiff and the Defendant:

16

> Gary Jutz believes that your behavior, as a senior member of the hotel management team, *is cause for censure*. . . .  Clearly, if you continue to pursue the activities which Gary Jutz has complained of, *you run the risk of being terminated*.

Plaintiff's Ex. 6 at 2 (emphasis added).

The court recognizes that there may be cases in which an employee's complaint does not give rise to a cognizable arbitrable claim.  For example, if an employee requested arbitration because he did not like the color of the walls of his office, or because he thought the cafeteria's food was a bit bland, an employer's refusal to arbitrate would likely not constitute a breach of the arbitration contract.  The Plaintiff in the instant case had a cognizable claim, however, because an employee need not wait until her or his employment is terminated before bringing suit under Title VII.  *See*, *e.g.*, 42 U.S.C. § 2000e-2(1)(a) (prohibiting employers from discriminating on the basis of sex with respect to conditions or privileges of employment).

The Defendant, in an effort to justify its prior refusal to arbitrate, contends that the October 11, 2004 letter did not give rise to an arbitrable claim because the Defendant took no "tangible employment action."[3]  In other words, the

---

[3] The March 13, 2006 hearing on the parties' motions was the first time that the Defendant raised this "tangible employment action" argument, and the parties were given leave to file additional briefing on this issue.  The court finds no sound basis upon which to apply a

(continued...)

Defendant argues that because it did not terminate the Plaintiff's employment, suspend him, or take any other action to change the Plaintiff's job duties or compensation, the Plaintiff did not have an arbitrable claim.  Again, this argument is specious.  In essence, the Defendant argues that an employer may refuse to arbitrate an employee's complaints so long as the employer takes no official employment action; thus, according to the Defendant, an employee must endure discriminatory treatment and harassment so long as the employer maintains the status quo.  This is absurd.

The Plaintiff's complaints of discrimination, harassment, intimidation, and retaliation undoubtedly fall within the broad scope of the arbitration agreement.  Had the Plaintiff filed a lawsuit on October 11, 2004 (while he was still an employee of the hotel) instead of requesting arbitration, there is no question that the court would have granted a motion to compel arbitration.  Correspondence

---

(...continued)
"tangible employment action" test to determine whether a claim is subject to arbitration.
The use of the term "tangible employment action" normally arises in a very different context.  In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 745 (1998), the Supreme Court held that a defense to vicarious liability under Title VII is available to employers where there was no "tangible employment action" so long as "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Accord Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  Whether an employee suffers a "tangible employment action" does not, however, determine whether that employee's claims are subject to arbitration.

between the Plaintiff and the Defendant demonstrate that the Plaintiff believed he had done nothing wrong and that the Plaintiff wished to engage in arbitration to end the alleged harassment against him and to preserve his employment with the Defendant.  The Defendant, however, refused to arbitrate and suggests that it refused to arbitrate because the Plaintiff was, in fact, involved in an inappropriate relationship with a subordinate.  In other words, the Defendant suggests that it refused to arbitrate with the Plaintiff because the Plaintiff's version of the facts was incorrect.  A party to an arbitration agreement may not refuse to arbitrate simply because it disagrees with the opposing party; if this were the case, all arbitration agreements would be meaningless.

The Plaintiff was not involved in some minor tiff with his employer. Instead, there was a serious disagreement over the Plaintiff's alleged involvement with a subordinate.  Had the Defendant agreed to arbitrate this dispute in October 2004, the parties may have been able to resolve this disagreement and avoid court action.  The Defendant's refusal to arbitrate the Plaintiff's disputes constitutes a breach of the arbitration agreement.  Because the Defendant breached the arbitration agreement, the Defendant cannot now seek to enforce it.  *Brown*, 430 F.3d at 1006 ("[W]e hold that when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated

19

arbitration proceedings or forego its right to compel arbitration.  That is, we hold that Dillard's cannot compel Brown to honor an arbitration agreement of which it is itself in material breach.").  Similarly, the court concludes that the Plaintiff is entitled to summary judgment on its claims that the Defendant breached the arbitration agreement.

> b.   <u>Waiver</u>

In *Brown*, the Ninth Circuit first concluded that Dillard's had breached its arbitration agreement with the plaintiff and, as such, was not permitted to enforce that arbitration agreement against the plaintiff.  The Ninth Circuit then explained:

> Dillard's urges us to analyze this case under the doctrines governing waiver of the right to arbitrate, rather than as a breach-of-contract case. We believe that it is more accurate to describe Dillard's behavior as breach of contract. However, we briefly note that if we were to approach this as a waiver case, we would have no difficulty finding that Dillard's waived its right to arbitrate Brown's claims.

*Id.* at 1012.  As discussed *supra*, the court concludes that the Defendant breached its contract with the Plaintiff and, therefore, may not now enforce the arbitration agreement against the Plaintiff.  Following *Brown*, however, the court also concludes that the Defendant waived its right to enforce the arbitration agreement.

"'A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" *Brown*, 430 F.3d at 1012 (quoting *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)). All three factors are met in the instant case. First, there is no question that the Defendant knew of its right to compel arbitration. Second, as discussed *supra*, the Defendant breached the arbitration agreement by refusing to arbitrate, and this refusal is an act inconsistent with the Defendant's right to compel arbitration. *Brown*, 430 F.3d at 1012. Third, the Plaintiff alleges that his case has been delayed, and that he has incurred costs and attorney's fees as a result of the Defendant's refusal to arbitrate; this delay and these costs and fees are prejudicial for purposes of determining waiver. *Id.* at 1012-13 ("Brown did not choose to litigate. She chose to arbitrate, and when she was rebuffed by Dillard's, she sued as a last resort. In this circumstance, we have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis.").

In sum, the Defendant breached its arbitration agreement with the Plaintiff and waived its right to enforce the arbitration agreement against the

Plaintiff.  As *Brown* explained, enforcing the arbitration agreement would be

improper:

> If we took Dillard's view and allowed it to compel arbitration notwithstanding its breach of the arbitration agreement, we would set up a perverse incentive scheme.  Employers like Dillard's would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation.  We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings.  To promote our national policy in favor of arbitration, *see Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), we must decline to compel it in this case.

*Brown*, 430 F.3d at 1012.

\\

\\

\\

\\

\\

## V.  <u>CONCLUSION</u>

Based on the foregoing, the Defendant's Motion to Compel

Arbitration is DENIED and the Plaintiff's Motion for Partial Summary Judgment is

GRANTED.

IT IS SO ORDERED.

DATED at Honolulu, Hawaii, April 3, 2006.

J. Michael Seabright
United States District Judge

*Cox v. Ocean View Hotel Corp.*, Civ. No. 05-00765 JMS/BMK, Order Denying Defendant's Motion to Compel Arbitration and to Stay Judicial Proceedings Pending Arbitration and Granting Plaintiff's Motion for Partial Summary Judgment

23